# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| FABIOLA IS RA EL BEY,<br>*Plaintiff*, | 3:19-cv-336 (KAD) |
| v. | |
| BARBARA BELLIS, *et al.*,<br>*Defendants*. | June 17, 2019 |

## MEMORANDUM AND ORDER RE:
## DEFENDANTS' MOTION TO DISMISS (ECF NO. 21)

**Preliminary Statement of the Case**

The Plaintiff, Fabiola Is Ra El Bey, proceeding *pro se*, brings this action against members of Connecticut's state judiciary, alleging civil rights violations stemming from state court proceedings presided over and adjudicated by the Defendants. (ECF No. 1.) The Defendants moved to dismiss on May 6, 2019, contending that this Court lacks jurisdiction to hear or adjudicate the Plaintiff's claims. (ECF No. 21.) The Plaintiff objected to the motion on May 28, 2019. (ECF No. 23.) For the reasons discussed below, the Defendants' Motion is **GRANTED.**

**Standard of Review**

Federal district courts are courts of limited jurisdiction under Article III, Section 2 of the United States Constitution. *See, e.g., Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940), *reh'g denied*, 309 U.S. 695 (1940). If subject matter jurisdiction is lacking, the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the Court "lacks the

statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

The question of subject matter jurisdiction is so fundamental that the Court must raise the issue *sua sponte*, even when the issue is not identified or raised by the parties. *See Mansfield, Coldwater & Lake Michigan Rwy. Co. v. Swan*, 111 U.S. 379, 382 (1884); *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."), *cert. denied*, 549 U.S. 1282 (2007).

Mindful of the Plaintiff's *pro se* status, the Court liberally construes the Complaint to raise the strongest arguments it may suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

**Allegations**

The Plaintiff has been a foreclosure defendant in state court since August 2009. (ECF No. 5, ¶ 12.) A judgment of strict foreclosure entered against her on February 26, 2018. (*Id*.) The Plaintiff alleges that "[t]he prospective termination of stay, which was the method used in the subject foreclosure case, is not being interpreted by the Defendants as limited to the single judgment of strict foreclosure originally appealed from by the Plaintiff, but is being interpreted as applicable prospectively to terminate all possible future stays that could arise in the foreclosure action." (*Id*. at ¶ 16.) As a result, the Plaintiff alleges she has been "deprived of the right to have a subsequent appellate stay in place[.]" (*Id*. at ¶ 17.) This "unjustified or erroneous deprivation" of her right to an appeal and a future appeal "means one of two things: either Practice Book 61-11(e) is unconstitutional and violates the Due Process Clause of the 14th Amendment to the US Constitution because it grants authority to the state court to prospectively terminate all of Plaintiff's rights to a future appellate stay from a single judgment, without further notice, hearing

or safeguards to any future appealable issue that may arise or; (2) the interpretation by the state court Defendants that the state court has authority to prospectively terminate all of Plaintiff's future appellate stay from the ruling on a single matter or judgment without any safeguards in place to a future appellate issue that may arise violates the Due Process Clause under the 14th Amendment to the Constitution of the United States." (*Id*. at ¶ 18.)

The Plaintiff alleges that the Defendants deprived her "(1) of the right to a scheduled foreclosure trial, (2) the right to subpoena witnesses at the scheduled foreclosure which was arbitrarily taken away from Plaintiff by the presiding judge Defendant Barbara Bellis, (3) the right to have those witnesses subpoenaed at the rescheduled trial which was changed to a Short Calendar hearing and (4) the right to have notice and a meaningful opportunity to be heard regarding outstanding motions that had a bearing on Plaintiffs ability to respond to judgment of strict foreclosure, motion to terminate appellate stay and motion for equitable relief." (*Id*. at ¶ 19.) The Plaintiff alleges that Defendants Bellis, Jennings and Truglia "conspired" to "deprive Plaintiff of her constitutional rights …" (*Id*. at ¶ 20.) In particular, the Plaintiff alleges that Defendant Bellis "had racial animus towards Plaintiff and wrongfully yelled at Plaintiff for 'rolling her eyes' and even threatened to jail Plaintiff if Plaintiff filed motions she did not like in defense of the foreclosure action, conspired with or otherwise gave directive to her subordinate judges, Jennings and Truglia to rule against Plaintiff, manipulated the type of foreclosure procedure from a trial to a hearing and manipulated the timing of the rulings on outstanding motions where Defendant Jennings issue rulings on the outstanding motions on the eve of the a strict foreclosure hearing, to deprive Plaintiff of the right to sufficiently determine how the rulings affected Plaintiff's property interest and to deprive Plaintiff of the necessary steps Plaintiff needed to take to prevent the deprivation of Plaintiff's property interest." (*Id*. at ¶ 22.) The Plaintiff alleges that "[t]hese actions

3

by the Superior Court Defendants prejudiced Plaintiff's ability to defend against the rulings of Defendant Jennings and Truglia, and contribute to the ongoing deprivation of Plaintiff's rights to due process and equal protection under the law." (*Id*.) The Plaintiff alleges a course of conduct by which, she argues, the Defendants "directly and intentionally manipulated the scheduling and timing" on her various motions. (*Id*. at ¶ 35.)

The Plaintiff further alleges that the Defendants on the Appellate Court "participated in the violation of Plaintiff's right to due process and equal protection under the law because the appellate court failed to remedy the wrong of the termination of all of Plaintiff's future automatic stays …" (*Id*. at ¶ 36.) As a result, she alleges, "the termination of all of Plaintiff's future appellate stay dangerously opened the door where the trial court was free to arbitrarily make any ruling it so choose against Plaintiff in any manner of its own choosing erroneous or not because Plaintiff was no longer fully protected by the state appellate process and because there were no protections in place to prevent the law days from running and mooting the appeal." (*Id*. at ¶ 38.) The Plaintiff alleges that "the entire Connecticut Supreme Court or an individual Jan or John Doe justice was/were also personally involved in the unconstitutional violation against Plaintiff[.]" (*Id*. at ¶ 40.) Finally, she alleges that "[a]ll of the Defendants herein are/were acting under the color of state law." (*Id*. at ¶ 42.)

The Plaintiff brings thirteen causes of action: violation of procedural due process and substantive due process claims against Defendants Truglia (Counts One and Two) and Defendant Jennings (Counts Three and Four); violation of equal protection and procedural and substantive due process claims against Defendant Bellis (Counts Five, Six, and Seven); a "Conspiracy To Interfere With Civil Rights Obstruction of Justice" claim against Defendants Bellis, Jennings, and Truglia (Count Eight); a violation of substantive and procedural due process claim against

Defendants Alvord, Lavine, and Bright, Jr. (Count Nine); a violation of substantive and procedural due process claim against "the Supreme Court Justices as John and/or Jane Doe" (Count Ten); a violation of equal protection claim against Defendants Alvord, Lavine, Bright Jr., Truglia, and Jennings (Count Eleven); a "Neglect to Prevent" claim against Defendants Alvord, Lavine, Bright, Jr., and John and Jane Doe Defendants of the Connecticut Supreme Court (Count Twelve); and "Declaration That Practice Book 61-11e is unconstitutional" (Count Thirteen).

The Plaintiff asks this Court to 1) enjoin the state courts from moving forward "or any judgment therefrom taking effect until after this case is decided"; 2) order the reinstatement of the Plaintiff's appellate stays; 3) order the reinstatement of the Plaintiff's oral argument on her motion to dismiss in state court; 4) order the state trial court to hold oral argument on a motion to substitute; 5) reverse the judgment of strict foreclosure and order the state court to hold a trial; 6) order the state courts to allow the Plaintiff to call witnesses during the reinstated trial; and 7) declare that Connecticut Practice Book Section 61-11e, which governs the termination of motions to stay, is unconstitutional as interpreted and applied by the state courts in Plaintiff's foreclosure proceeding, and to enjoin the state courts from applying the rule on a prospective basis.

**Discussion**

The Defendants assert that the Plaintiff's claims are barred by both the *Rooker-Feldman* and *Younger* abstention doctrines. As such, they argue, this Court does not have subject matter jurisdiction to hear or adjudicate these claims. The Defendants raise a host of other bases upon which the Complaint should be dismissed, to include a failure to state a claim under Rule 12(b)(6), the Anti-Injunction Act, the Eleventh Amendment, absolute judicial immunity, and qualified immunity. The Court does not reach these additional issues because it has determined that it lacks subject matter jurisdiction over this matter.

*Rooker-Feldman*

When a federal action follows a state action, the federal action may, under certain circumstances, be prohibited by what has become known as the *Rooker-Feldman* doctrine. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4469.1 (2018). The *Rooker-Feldman* doctrine derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Together, those cases "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany City. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The *Rooker-Feldman* doctrine emerged in response to complaints that "invited federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. "Since federal district courts are granted original – and not appellate - jurisdiction, cases that function as *de facto* appeals of state-court judgments are therefore jurisdictionally barred." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018).

The doctrine has been applied "frequently in the foreclosure process." *Id.*; *see, e.g.*, *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (plaintiff claimed that his foreclosure judgment was obtained via fraud and in error; claim barred by *Rooker-Feldman* as it would require "the federal court to review the state proceeding and determine that the foreclosure judgment was issued in error"); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F.

6

App'x 20, 21 (2d Cir. 2016) (same). "[I]n order for a court to be deprived of jurisdiction under the *Rooker-Feldman* doctrine, four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho*, 910 F.3d at 645 (citing *Hoblock*, 422 F.3d at 85).[1]

Here, all four requirements are satisfied. The first is satisfied by the state court's judgment of strict foreclosure against the Plaintiff as well as the Appellate Court's denial of relief regarding the termination of the Plaintiff's stay. (*See* ECF No. 21-1, 1.) The second prong is also satisfied. As noted above, the Plaintiff alleges in her Complaint that, *inter alia*, the actions of state court judges in rendering judgment and thereafter deprived her of various substantive and procedural rights as well as her property interest. The third requisite is similarly manifest by looking to the allegations in the complaint and the relief requested. Indeed, the Plaintiff asks this Court to reverse the state court judgment of strict foreclosure and otherwise direct the conduct of the foreclosure proceedings going forward.[2] Finally, the judgment of strict foreclosure – entered on February 26, 2018, from which the Plaintiff seeks relief, predates the filing of the Complaint by well over a year.

---

[1] The Plaintiff argues that *Rooker-Feldman* is inapplicable here because, *inter alia*, as between the state court foreclosure action and the instant case, "the parties are not the same." (ECF No. 23, 12.) As the Defendants correctly note, *Rooker-Feldman*'s "procedural" requirement of "common identity between the state and federal plaintiffs" is met where, as here, "the federal plaintiff was a named party in the state lawsuit." *Hoblock*, 422 F.3d at 89.
[2] The Plaintiff's reliance on *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* is inapposite. Indeed, as noted above, the Supreme Court clearly held therein that *Rooker-Feldman* applies where a "state-court loser[] … invit[es] district court review and rejection[.]" 544 U.S. at 284. The underlying litigation posture in *Exxon* is wholly dissimilar to that in the instant case. Unlike the Plaintiff here, "ExxonMobil plainly has not repaired to federal court to undo the Delaware judgment in its favor." *Id*. at 293. As such, Plaintiff's analogy between this case and the circumstances in *Exxon* does not withstand scrutiny.

Accordingly, the Court lacks subject matter jurisdiction to hear or adjudicate these claims. *See McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) ("[T]he *Rooker-Feldman* doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim" in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.") (internal quotation marks and citations omitted); *Murphy v. Riso*, No. 11-CV-0873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) ("numerous courts in [the Second] Circuit … have held that attacks on a judgment of foreclosure are barred by the *Rooker-Feldman* doctrine.") (collecting cases); *Walker v. Mirbourne NPN 2LLC*, No. 18-CV-5211 (BMC)(CP), 2018 WL 4494875, at *2 (E.D.N.Y. Sept. 19, 2018) ("Plaintiff seeks relief from that state court order by inviting this Court to issue a preliminary injunction and temporary restraining order enjoining its enforcement. But that is something this Court cannot do. Rather, to obtain the relief he seeks, plaintiff must pursue his claims through the state court system and then petition for a writ of certiorari to the United States Supreme Court.").

The Motion to Dismiss is therefore GRANTED on this basis.

*Younger* **Abstention**

Generally, "federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The Supreme Court, however, has recognized "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.* In *Younger v. Harris*, 401 U.S. 37, 91 (1971), the Supreme Court held that federal courts must abstain from hearing matters "when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Town Ct. for Town*

*of Springfield*, 56 F.3d 391, 393 (2d Cir. 1995). Federal courts "must abstain" where a party seeks to enjoin "'[1)] ongoing state criminal prosecution,' [2)] 'certain civil enforcement proceedings,' and [3)] 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Disability Rights New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citing *Sprint*, 571 U.S. at 78).

This case implicates the third category of cases for which abstention is mandated. Indeed, "[a] state foreclosure action …. is one of the types of actions in which federal courts abstain from interfering, pursuant to *Younger*." *Lindsay v. Tierney*, No. 3:18-CV-840 (JCH), 2019 WL 132728, at *3 (D. Conn. Jan. 8, 2019); *see also Santana v. Fed. Nat'l Mortg. Ass'n*, No. 115-CV-1424 (TJM/DJS), 2016 WL 676443, at *2 (N.D.N.Y. Feb. 18, 2016) (collecting cases). Here, Plaintiff seeks to enjoin the state court from enforcing its judgment of strict foreclosure. As such, she asks this Court to intervene in a civil proceeding that implicates a state's interest in enforcing the orders and judgments of its courts. Accordingly, "[t]his Court is barred from reviewing any matters currently pending in plaintiff's state court foreclosure action." *Walker*, 2018 WL 4494875, at *2.

The Plaintiff challenges the applicability of *Younger* under the "adequate opportunity" prong. (ECF No. 23, 12-14.) Her reliance on this prong, however, is misplaced. "[A]bstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982)); *see also Juidice v. Vail*, 430 U.S. 327, 337 (1977) (reasoning that where it is "abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings ... [n]o more is required to invoke *Younger* abstention"). The Defendants accordingly argue, correctly, that "Practice Book § 66-6

unquestionably provided Plaintiff with an opportunity to raise her federal challenges to the trial court's stay order, and she took advantage of that opportunity by filing a motion for review with the Appellate Court." (ECF No. 24, 6.) The Second Circuit has made clear that "the question whether the state's procedural remedies *could* provide the relief sought does not turn on whether the state *will* provide the relief sought by the plaintiff before the federal court." *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000). Put simply, the Plaintiff has "made no showing that the [s]tate's laws, procedures, or practices would prevent [her] effective interposition of her federal contentions." *Id*.

The Motion to Dismiss is GRANTED on this basis as well.

The Defendants' Motion to Dismiss the Complaint is therefore **GRANTED**. The Clerk is directed to enter judgment in favor of the Defendants.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of June 2019.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE